# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| JACKIE R. OLIVER, | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   CAUSE NO.: 1:19-CV-29-JPK |
| | ) |
| ANDREW SAUL, Commissioner of | ) |
| Social Security Administration, | ) |
|     Defendant. | ) |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Jackie R. Oliver on January 30, 2019, and Plaintiff's Opening Brief [DE 20], filed on August 7, 2019. Plaintiff requests that the February 8, 2018 decision of the Administrative Law Judge denying her claim for disability insurance benefits be reversed and remanded for an award of benefits or, in the alternative, for a new hearing. The Commissioner filed a response, and Plaintiff filed a reply. For the following reasons, the Court remands this matter for further administrative proceedings.

## PROCEDURAL BACKGROUND

On September 26, 2015, Plaintiff filed an application for disability insurance benefits, alleging disability as of June 1, 2014. The claim was denied initially and on reconsideration. Plaintiff requested a hearing, which was held before an Administrative Law Judge (ALJ) on September 5, 2017. On February 8, 2018, the ALJ issued an unfavorable decision, making the following findings:[1]

    1.    The claimant meets the insured status requirements of the Social Security Act through March 31, 2019.

---

[1] These are direct quotes of each of the ALJ's bolded findings made at various points throughout the decision. Internal citations to the Code of Federal Regulations are omitted.

2. The claimant has not engaged in substantial gainful activity since June 1, 2014, the alleged onset date.

3. The claimant has the severe combination of impairments of: fibromyalgia; cervical degenerative disc disease and thoracic spondylosis and L5-S1 disc space bulge with lumbar stenosis; positive rheumatoid factor; chronic fatigue and malaise; attention deficit disorder; and generalized anxiety disorder.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the [ALJ found] that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant is limited to lifting, carrying, pushing and pulling less than ten pounds frequently and ten pounds occasionally. The claimant can sit at least six hours in an eight hour work day and stand and/or walk two hours in an eight hour work day. The claimant should not climb ropes, ladders or scaffolds. The claimant is limited to work that involves simple, routine and repetitive tasks that can be learned through short demonstration and up to thirty days. The claimant can maintain the concentration required to perform simple tasks. The claimant can remember simple work like procedures. The claimant can make simple work related decisions. The claimant can maintain the concentration, persistence, and attention to perform such duties on a day-in and day-out basis, for eight hours per day, five days per week or within some other form of full time competitive work environment. The claimant is limited to superficial interaction with coworkers, supervisors and the public, with superficial interaction defined as occasional and casual contact not involving prolonged conversation. Prolonged conversation is not necessary for task completion. Contact with supervisors still involves necessary instruction. The claimant is limited to low stress work defined as requiring only occasional decision making and only occasional changes in the work setting. The claimant can tolerate predictable changes in the work environment.

6. The claimant has no past relevant work.

7. The claimant was born [in 1989] and was 24 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not an issue because the claimant does not have past relevant work.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 1, 2014, through the date of this decision.

(AR 12-26[2]).

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. Plaintiff filed this civil action pursuant to 42 U.S.C. § 405(g) for review of the Agency's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). The question before the Court is not whether the claimant is in fact disabled, but whether the ALJ's decision "applies the correct legal standard and is supported by substantial evidence." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). Under § 405(g), the Court must accept the Commissioner's factual findings as conclusive if they are supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th

---

[2] Page numbers in the Administrative Record (AR) refer to the page numbers assigned by the filer, which is found on the lower right corner of the page, and not the page number assigned by the Court's CM/ECF system.

Cir. 2003)). However, "if the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)). At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ also has a basic obligation to develop a full and fair record and "must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014).

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability," which is defined as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). The ALJ follows a five-step inquiry to determine whether a claimant is disabled: (1) whether the claimant has engaged in substantial gainful activity since the alleged onset of disability, (2) whether the claimant has a medically determinable impairment or combination of impairments that is severe, (3) whether the claimant's impairment or combination of impairments meets or medically equals the criteria of any presumptively disabling impairment listed in the regulations, (4) if the claimant does not meet a listing, whether she is unable to perform her past relevant work, and (5) if the claimant is unable to perform past relevant work, whether she is unable to perform any work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).

Prior to step four, the ALJ determines the claimant's residual functional capacity (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite her limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). An affirmative answer at either step three or step five leads to a finding of disability. *Briscoe ex rel. Taylor v. Barnhart*, 524 F.3d 345, 352 (7th Cir. 2005); 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001).

## ANALYSIS

Plaintiff alleges that the ALJ erred by (1) improperly overemphasizing her daily activities and (2) failing to incorporate all of Plaintiff's limitations in the RFC and further failing to consider the combined impact of the limitations from all of Plaintiff's impairments.

### A. Daily Activities

Plaintiff argues that the ALJ improperly overemphasized her daily activities in his disability determination. Plaintiff relies in large part on *Beardsley v. Colvin*, a case where the Seventh Circuit Court of Appeals noted that, while "it is proper for the Social Security Administration to consider a claimant's daily activities in judging disability, . . . we have urged caution in equating these activities with the challenges of daily employment in a competitive environment, especially when the claimant is caring for a family member." 758 F.3d at 838.

Plaintiff explains that, to the detriment of her health, she cares for three young children: a son with cerebral palsy, a daughter with autism, and another son with developmental delays. (Pl.'s Opening Br. 13, ECF No. 20). Plaintiff states that her efforts increase her pain, that she requires a 1-2 hour nap every day, and that her ex-husband provides a significant amount of help. *Id.* at 14-15.

5

Accordingly, Plaintiff asserts that her daily activities do not resemble the challenges of daily employment in a competitive environment. *Id.* at 15.

In response, the Commissioner contends that, although the ALJ noted the high level of care Plaintiff provides to her children and the activities she engages in with them, the ALJ did not rely solely on Plaintiff's caretaking responsibilities to evaluate her functioning. (Def.'s Mem. 9, ECF No. 21). The Commissioner states that the ALJ considered Plaintiff's testimony, statements to medical providers, and medical records, and properly found that Plaintiff's allegations were simply not consistent with the evidence before him. *Id.*

The Commissioner notes that the ALJ explained that Plaintiff's alleged side effects due to her medication were not supported by the record. *Id.* (citing AR 20). The Commissioner goes on to recount the ALJ's discussion of Plaintiff's various alleged symptoms juxtaposed against the medical records. *Id.* at 9-11 (citing AR 20-23). In his discussion of Plaintiff's back pain, which she alleges keeps her from working, the ALJ explained that the record showed that physical therapy and injections managed her pain. *Id.* at 10-11 (citing AR 21). The ALJ further explained that Plaintiff's arthralgia, myalgia, and fibromyalgia were managed with medication, as were her anxiety, sadness, and attention deficit disorder. *Id.* at 11-12 (citing AR 21-22). The Commissioner thus argues that, unlike in *Beardsley*, the ALJ in the instant matter considered myriad factors when he evaluated Plaintiff's symptoms, including her daily activities, inconsistent statements, treatment records, and documented improvement with medication. *Id.* at 12-13.

Plaintiff's reply states only that she stands by the arguments in her Opening Brief and that the Commissioner's argument misses a major point of *Beardsley*. (Pl.'s Reply 1, ECF No. 22). Plaintiff contends, "[p]arenthood may impel a person to engage in heroic efforts to take care of their children despite disability. These heroic efforts make them no less disabled." *Id.*

The ALJ found that Plaintiff's "allegations concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (AR 20). Initially, though the issue was not raised by Plaintiff, the Court notes that this is an incorrect statement of the relevant standard. The ALJ is not tasked with determining whether Plaintiff's symptoms are "entirely consistent" with the medical evidence. Rather, the ALJ is instead instructed to determine whether the allegations concerning the intensity, persistence, and limiting effects of these symptoms "can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a), (c)(4) (describing how the Social Security Administration considers symptoms). The standard that a symptom "can reasonably be accepted as consistent" with objective evidence, as one court explained, "is clearly a different, and a not as rigorous, [] standard than the ALJ[] demanded in this case, namely that allegations be 'entirely consistent' with the medical and other evidence." *Minger v. Berryhill*, 307 F. Supp. 3d 865, 871 (N.D. Ill. 2018).

Nonetheless, an ALJ's use of an oft-repeated phrase such as "not entirely consistent" is only meaningless boilerplate "when the ALJ substitutes it for a proper, full-bodied explanation of why credibility is lacking." *Hammerslough v. Berryhill*, 758 F. App'x 534, 539 (7th Cir. 2019). This language is not necessarily fatal so long as the ALJ fully explains his decision and a "commonsensical reading" of the entire decision suggests no error. *Clemente A. v. Saul*, No. 18 CV 6345, 2019 WL 3973117, *3-4 (N.D. Ill. Aug. 22, 2019) (declining to find that ALJ's use of boilerplate language tainted the decision with legal error or undermined the entirety of an otherwise-supported symptom assessment where ALJ used the phrase "not entirely consistent" but nonetheless applied the correct standard of "reasonably . . . consistent with the objective medical evidence and other evidence").

7

In the instant matter, it appears to the Court that the ALJ applied the correct standard, even though the incorrect "entirely consistent" language was used in his decision. At the beginning of his discussion of the RFC, the ALJ properly stated the standard as whether the allegations concerning the intensity, persistence, and limiting effects of Plaintiff's symptoms "can reasonably be accepted as consistent with the objective medical evidence and other evidence," pursuant to 20 C.F.R. § 404.1529. (AR 19). Despite his later erroneous statement of the standard as "entirely consistent with," it seems that the ALJ nevertheless endeavored to compare Plaintiff's allegations against the underlying records for a determination of whether her claims could be reasonably accepted as consistent with the medical evidence. However, the Court finds that the ALJ's opinion is deficient for other reasons, as explained further below.

While it seems the ALJ took care to contrast Plaintiff's testimony regarding her alleged symptoms with the underlying medical records, he nonetheless placed improper emphasis on Plaintiff's daily activities when evaluating her claims of chronic fatigue and malaise. The ALJ recounted a January 2015 medical record reflecting Plaintiff complained of fatigue, stated that she was sleeping 9-10 hours per night, and denied any significant affective symptoms. (AR 22, AR 404). The Court notes that the ALJ omitted the portion of this medical record noting that Plaintiff described this problem as "quite severe in intensity." (AR 404). The ALJ further recounted an April 2015 examination, during which Plaintiff stated that she could not sleep due to back pain, and a November 2015 examination, where Plaintiff stated that the quality of her sleep was poor. (AR 22, 398, 597). In August 2016 Plaintiff was seen for obstructive sleep apnea, stated that she was still fatigued, and further stated that she was not sleeping well, though the ALJ noted only the last of these issues. (AR 22, 784). The record of an October 2016 examination stated that

Plaintiff again complained of fatigue (AR 22, 791).[3] In February 2016, Plaintiff was assessed with obstructive sleep apnea and underwent a pulse oximetry test, which revealed her oxygen level was less than 89% for ten minutes. (AR 22, 571, 578).

The ALJ then listed the evidence he found contrary to Plaintiff's allegations regarding the existence and severity of her chronic fatigue and malaise. A thyroid hormone level test conducted in August 2015 came back normal. (AR 22, 505). Further, a physician's note from a July 2016 examination stated that the machine used in Plaintiff's overnight oximetry test was not functioning properly. (AR 22, 777). A note from an August 2016 examination also stated that a later conducted sleep study was normal. (AR 22, 784). As framed by the ALJ, examination notes in February[4] and March 2017 indicated that Plaintiff "did not allege fatigue." (AR 22, 807-21). A September 2017 record stated that Plaintiff was advised to pursue natural forms of sleep aid, such as melatonin. (AR 22, 896). A function report filled out by Plaintiff in February 2016 explained that she helps her children get ready for school, takes her children to therapy, assists her children with homework, prepares meals, does laundry, vacuums, drives, and shops. (AR 22, 259, 261, 262, 268). Finally, Plaintiff testified at the hearing that she helps her middle child go to the bathroom, eat, dress, and bathe. (AR 22, 45). Plaintiff further testified that she could make meals, clean up toys, do dishes with breaks, and spend time with a friend once or twice a month. (AR 22, 59-60, 63). After recounting this evidence, the ALJ concluded that, "[o]verall, despite [Plaintiff's] allegations of fatigue, she has demonstrated that she is able to take care of herself and her three young children." (AR 22).

---

[3] The ALJ further stated that a December 2016 examination reflected Plaintiff complained of fatigue, but the Court is unable to find this statement in the cited medical record.

[4] The ALJ stated this date as January 2017, but the cited exhibit contains no record of an examination conducted in that month.

The Seventh Circuit Court of Appeals has often warned against equating the performance of daily activities with the ability to perform full-time, competitive work. *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . , and is not held to a minimum standard of performance, as she would be by an employer."); *Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011); *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009); *Zurawski*, 245 F.3d at 887. The ALJ was not tasked with determining whether Plaintiff was capable of caring for herself and her children, yet he emphasized her ability to do so as if it undercut her allegations of chronic fatigue and malaise. In doing so, the ALJ ignored Plaintiff's testimony that she takes multiple naps per day due to exhaustion. During the hearing, Plaintiff testified that, during a typical day, she normally needs to lay down for 1-2 hours after getting her children ready for school. (AR 59). Plaintiff then takes another nap for a couple of hours after her daughter returns home from a half day at school. (AR 59-60, 91). Moreover, the ALJ's wording seems to misrepresent the February and March 2017 examination notes. The ALJ stated that, "[i]n January and March 2017, examination notes indicate that [Plaintiff] did not allege fatigue." (AR 22). However, these records simply do not address Plaintiff's fatigue at all; they do not contain any affirmative statement that her fatigue was resolved or lessened. (AR 807-21). This is unsurprising, as these exams were conducted to treat other acute medical issues. *Id.* The ALJ summarized Plaintiff's daily activities and concluded that they negated Plaintiff's allegation that her fatigue impacts her ability to perform full-time work.

The Court does not suggest that it was wholly improper for the ALJ to consider Plaintiff's daily activities. Per the regulations and case law, ALJs are directed to consider a claimant's daily activities when evaluating a claimant's credibility and the severity of her symptoms. *See Shumaker*

*v. Colvin*, 632 F. App'x 861, 866 (7th Cir. 2015) (noting the ALJ permissibly evaluated the plaintiff's daily activities against her asserted impairments in assessing whether she was exaggerating the effects of her impairments); *see also* 20 C.F.R. § 404.1529(c)(3)(i) (explaining that the ALJ will consider daily activities in evaluating a claimant's symptoms); SSR 96-7P, 1996 WL 374186, at *3 (directing the ALJ to consider daily activities in determining the credibility of a claimant's statements about symptoms). Nonetheless, in reaching his conclusion, the ALJ improperly relied upon Plaintiff's daily activities in the face of medical records and testimony documenting her impairments—specifically, her fatigue. Moreover, in his discussion of Plaintiff's migraines, the ALJ mentioned the help Plaintiff receives from her ex-husband in caring for her children. (AR 15). Yet, in discussing Plaintiff's daily activities, the ALJ left out any reference to the help Plaintiff receives in accomplishing these activities. As stated by the Seventh Circuit Court of Appeals, the failure to recognize the differences between activities of daily living and activities in a full-time job including, *inter alia*, that a claimant may receive help from other persons in daily life, is problematic in social security disability cases. *Bjornson*, 671 F.3d at 647. Here, the ALJ's conclusion that Plaintiff demonstrated she was able to care for herself and her children, despite her allegations of fatigue, is meaningless. Relying upon such a determination in finding that Plaintiff could perform full time work was error. *Beardsley*, 758 F.3d at 838. The ALJ impermissibly used Plaintiff's daily activities to justify the parameters of the RFC and equated Plaintiff's ability to engage in daily activities with a lack of disability related to one of her claimed impairments. (AR 22). Accordingly, remand is required for proper consideration of Plaintiff's alleged chronic fatigue and malaise and any potential limitations therein.

## B. Residual Functional Capacity

Plaintiff argues that the ALJ failed to include a limitation in the RFC to accommodate both Plaintiff's excessive absenteeism due to viral outbreak periods and Plaintiff's off task requirements due to her daily naps. Plaintiff contends that this contravenes SSR 96-8p, which requires an ALJ to "consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe,'" when assessing the RFC. 1996 WL 374184, *5 (July 2, 1996). Plaintiff explains that she suffers from chronic fatigue and is required to take a 1-2 hour nap every day. (Pl.'s Opening Br. 16, ECF No. 20). Plaintiff further states that she has suffered from a persistent viral infection since at least 2013, which presents in outbreaks for approximately seven days every three months. *Id.* Because the vocational expert (VE) testified that employer off task tolerance is approximately 10%, Plaintiff contends that an RFC containing proper absenteeism and off task limitations would preclude her from engaging in competitive work. *Id.*

The Commissioner responds that Plaintiff failed to point to any evidence to support the arguments in her brief. (Def.'s Mem. 5, ECF No. 21). Nonetheless, the Commissioner asserts that the ALJ did consider the limited evidence available regarding Plaintiff's alleged fatigue and viral outbreak periods. *Id.* The Commissioner states that the ALJ noted Plaintiff's alleged symptoms throughout the relevant period and juxtaposed those allegations against the medical records, finding that the records did not support the extent to which Plaintiff claimed these symptoms impacted her ability to engage in basic work activities. *Id.* at 5-7. Finally, the Commissioner argues that Plaintiff bears the burden of providing evidence establishing the degree to which her impairments limit her RCF, pursuant to 20 C.F.R. § 404.1545(a)(3), and that she proffered no evidence showing that she needs naps or other accommodations for her viral outbreaks. *Id.* at 7-8.

Once again, Plaintiff's reply states only that she stands by the arguments in her Opening Brief and that these constitute a sufficient reply. (Pl.'s Reply 1, ECF No. 22).

The RFC is a measure of what an individual can do despite the limitations imposed by her impairments. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); 20 C.F.R. § 404.1545(a). The determination of a claimant's RFC is a legal decision rather than a medical one. 20 C.F.R. § 404.1527(e)(1); *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995). The RFC is an issue at steps four and five of the sequential evaluation process and must be supported by substantial evidence. SSR 96-8p at *3; *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000).

"RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing' basis means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p at *1. "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id.* at *3. The relevant evidence includes medical history; medical signs and laboratory findings; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id.* at *5. In arriving at an RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." *Id*. The "ALJ must also consider the combined effects of all the claimant's impairments, even those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *see also Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003).

The ALJ's analysis of Plaintiff's chronic fatigue was addressed in the section above and need not be addressed again here, as the Court has already found that remand is appropriate for proper consideration of this issue. Turning next to the issue of Plaintiff's viral infection, the Court again finds that the ALJ committed error.

In arriving at his decision, the ALJ failed to address the issue of Plaintiff's viral infection entirely. Plaintiff presented numerous medical records confirming her diagnosis and noting treatment sought. (AR 228, 333, 395, 415, 418, 421, 505, 540, 789, 807, 812). Additionally, Plaintiff offered testimony at the hearing regarding this issue, explaining that she usually experienced an outbreak every three months, and that these outbreaks typically lasted 7-10 days. (AR 77-81, 91-92). Plaintiff further testified that these outbreaks cause her pain, require her to take pain medication, make it difficult for her to get along with others, lead her to lose her temper, and increase her depression. (AR 78-81). Finally, Plaintiff testified that these outbreaks would cause her to miss work. (AR 80).

Despite the medical records and testimony offered by Plaintiff, the ALJ simply neglected to address her viral infection anywhere in his opinion. This was error. *See Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009) ("In determining an individual's RFC, the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling."); *Terry*, 580 F.3d at 477 ("Although an ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to the ruling."). This error is compounded by the VE's testimony that Plaintiff would be precluded from working if she missed more than one day of work per month. (AR 92-93). Accordingly, remand is required for proper consideration of Plaintiff's medically determinable impairments and the combined effects of these impairments, including her viral

infection and chronic fatigue, even if the ALJ finds that these would not be considered severe in isolation.

### C. Request for Award of Benefits

Plaintiff requests that the Court reverse and remand for an award of benefits or, in the alternative, for a new hearing. "Courts have the statutory power to affirm, reverse, or modify the Social Security Administration's decision, with or without remanding the case for further proceedings." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing 42 U.S.C. § 405(g)). Nonetheless, "[a]n award of benefits is appropriate . . . only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Id.* at 415. Remand for further proceedings, not an award of benefits, is required in this matter, as it is not clear on the current record that an award of benefits is required.

### CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the alternative relief sought in Plaintiff's Opening Brief [DE 20], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** this matter for further proceedings consistent with this Opinion and Order. The Court **DIRECTS** the Clerk of Court to **ENTER JUDGMENT** in favor of Plaintiff and against Defendant.

So ORDERED this 31st day of March, 2020.

s/ Joshua P. Kolar  
MAGISTRATE JUDGE JOSHUA P. KOLAR  
UNITED STATES DISTRICT COURT